UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE AMERICAN HOSPITAL ASSOCIATION, *et al.*,

*Plaintiffs,*

–v–

THE DEPARTMENT HEALTH AND HUMAN SERVICES, *et al.*,

*Defendants.*

Case No. 1:18-cv-2112

**PLAINTIFFS' STATEMENT FACTS IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 7(h)(2), the American Hospital Association, America's Essential Hospitals, the Association of American Medical Colleges, 340B Health, Genesis Healthcare System, Kearny County Hospital, and Rutland Regional Medical Center, through their undersigned counsel, file this Statement of Facts in support of their Motion for Summary Judgment.

1.      In September 2010, HHS issued an Advance Notice of Proposed Rulemaking (ANPRM) seeking stakeholder input on eight areas related to its newly added authority to impose civil money penalties on drug companies participating in a program created by section 340B of the Public Health Service Act, 42 U.S.C. § 256b (the "340B program"), and on "The Integration of Civil Money Penalties with Other Provision in the Affordable Care Act." 75 Fed. Reg. 57,230, 57,231 (September 20, 2010).

2. In June 2015, HHS issued a notice of proposed rulemaking, setting forth "the calculation of ceiling prices and application of civil money penalties." 80 Fed. Reg. 34,583 (June 17, 2015).

3. The proposed rule, among other things, (1) required drug companies to calculate 340B ceiling prices on a quarterly basis, to six decimal places, and "for the smallest unit of measure," (2) required a ceiling price of $0.01 if the calculated ceiling price is less than that, (3) provided a detailed mechanism for estimating ceiling prices for new drugs, (4) required HRSA to "publish the 340B ceiling prices rounded to two decimal places," (5) set forth detailed standards for the assessment and imposition of civil monetary penalties, including defining what constitutes an "instance of overcharging." *Id.* at 34,588.

4. With respect to the price estimation for new drugs, the proposed rule stated: "Calculation of the current quarter ceiling price for each covered outpatient drug is based on pricing data from the immediately preceding quarter. For new drugs, there will be no sales data from which to determine the 340B ceiling price." *Id.* at 34,585.

5. In April 2016, HHS reopened the comment period on the proposed rule for 30 days inviting public comment on (1) the ceiling price for covered outpatient drugs when the calculated ceiling price is less than $0.01, (2) the calculation of ceiling prices for new drugs, and (3) the definition of "knowingly and intentionally" for the imposition of manufacturer civil money penalties. 81 Fed. Reg. 22,960 (April 16, 2016).

6. On January 5, 2017, the Department issued the final rule regarding the "calculation of ceiling prices and application of civil money penalties." 82 Fed. Reg. 1210 (Jan. 5, 2017). The January 2017 final rule largely implemented the regulation HHS had proposed

2

almost nineteen months earlier, in June 2015, with some modifications to account for input from some of the commenters and to improve clarity and readability. *Id*. at 1211.

7.  The January 2017 final rule, among other things, (1) sets forth a methodology for calculating ceiling prices (including for new drugs and drugs subject to the statutory inflation penalty); (2) requires the publication of ceiling prices; and (3) sets forth detailed standards for the assessment and imposition of civil monetary penalties. *Id.* at 1210.

8.  HHS received approximately 35 comments during the first comment period and approximately 70 comments during the second comment period. *Id.* at 1211. The comments addressed almost every aspect of the proposed regulations, including HHS's authority to adopt the regulations, the timing of implementation, the terminology definitions, the quarterly ceiling price reporting requirement, and decimal place rounding. *Id.* at 1211-28. There were especially extensive comments submitted on the policy for pricing based on the statutory inflation penalty, *id.* at 1214-17, the new drug ceiling price methodology, *id.* at 1217-20, and the civil monetary penalty standards, *id.* at 1220-27.

9.  The January 2017 final rule set an effective date of March 6, 2017. *Id.* at 1210. The Department determined, however, that because that date would "fall[] in the middle of a quarter," it would wait to "begin enforcing the requirements of this final rule" until "the start of the next quarter, which begins April 1, 2017." *Id.* at 1211. The Department stated that "this timeframe provides manufacturers sufficient time to adjust systems and update their policies and procedures." *Id.*

10. In the economic analysis to the January 2017 final rule, HHS stated: "This final rule codifies current policies, some of which have been modified, regarding the calculation of the

340B ceiling price and manufacturer civil money penalties. HHS does not anticipate that the imposition of civil money penalties would result in significant economic impact." *Id.* at 1227.

11.     In the economic analysis to the January 2017 final rule, HHS also stated: "Because the components of the 340B ceiling price are already calculated by the manufacturers under the [Medicaid Drug Rebate Program] and reported to CMS, HHS does not believe this portion of the final rule would have an impact on manufacturers. The impact on manufacturers would also be limited with respect to calculation of the 340B ceiling price as defined in this final rule due to the fact that manufacturers regularly calculate the 340B ceiling price and have been doing so since the program's inception." *Id.* at 1227.

12.     In the economic analysis to the January 2017 final rule HHS also stated: "The proposed rule and the policies finalized herein codify several current policies, some of which have been modified regarding the calculation of the 340B ceiling price, and introduce manufacturer civil money penalties. . . . With the modifications made in this final rule, we believe that the stakeholder's administrative burdens with respect to this policy will be minimal." *Id.* at 1228.

13.     On January 20, 2017, the incoming administration imposed a 60-day freeze on pending regulations. 82 Fed. Reg. 8346 (Jan. 24, 2017). On March 6, 2017, HHS issued a notice that the freeze extended the effective date of the January 2017 340B final rule by fifteen days, from March 6 to March 21, 2017. 82 Fed. Reg. 12,508 (March 6, 2017).

14.     In March 2017, the Secretary promulgated an interim final rule with comment period further delaying the effective date of the January 2017 340B final rule to May 22, 2017. 82 Fed. Reg. 14,332 (March 20, 2017). HHS stated that the rationales for the delay were the following: (1) "to consider questions of fact, law, and policy raised in the rule, consistent with

the 'Regulatory Freeze Pending Review' memorandum," (2) "to provide affected parties sufficient time to make needed changes to facilitate compliance," (3) to address "substantive questions raised" by the rule, and (4) because "we intend to engage in longer rulemaking." *Id.* at 14,333. HHS requested comment on whether the delay should be extended further, to October 1, 2017. *Id.* at 14,332.

15. In May 2017, the Secretary issued a final rule further delaying implementation of the January 2017 340B final rule to October 1, 2017. 82 Fed. Reg. 22,893 (May 19, 2017). The final rule states that "HHS determined that delaying the effective date to October 1, 2017 is necessary to provide adequate time for compliance and to mitigate implementation concerns." *Id.* at 22,894.

16. In August 2017, HHS proposed a fourth delay. 82 Fed. Reg. 39,553 (Aug. 21, 2017). HHS received nearly one hundred comments, many opposing further delay. 82 Fed. Reg. 45,511, 45,512 (Sept. 29, 2017). The Secretary further delayed the effective date again, by another nine months, to July 1, 2018. *Id.* at 45,511. In the final rule, HHS stated that it "continues to believe that the delay of the effective date provides regulated entities sufficient time to implement the requirements of the rule, as well as allowing a more deliberate process of considering alternative and supplementary regulatory provisions, and to allow for sufficient time for additional rulemaking." *Id.* at 45512. HHS also agreed with commenters who stated that delay was necessary "to align with the Administration priorities of analyzing final, but not yet effective, regulations, and removing or minimizing unwarranted economic and regulatory burdens related to the Affordable Care Act" and thereby to "comply[] with Executive Order 13765 to delay implementation on provisions of [the ACA]" on various grounds. *Id.* at 45,512.

17. In May 2018, the Secretary issued a notice of proposed rulemaking to delay the effective date an additional year, until July 1, 2019. 83 Fed. Reg. 20,009 (May 7, 2018).

18. In the May 2018 proposal, HHS stated that it "intends to engage in additional or alternative rulemaking on these issues" and that it "is proposing to further delay the effective date of the January 5, 2017 final rule to July 1, 2019 to more fully consider the regulatory burdens that may be posed by this final rule" in accordance with the January 20, 2017 Executive Order entitled "Minimizing the Economic Burden of the Patient Protection and Affordable Care Act Pending Repeal." 83 Fed. Reg. at 20,010.

19. In the May 2018 proposal, HHS stated: "We do not believe that this delay will adversely affect any of the stakeholders in a meaningful way." *Id*. at 20,009.

20. In the May 2018 proposal, HHS stated that it "believes the majority of manufacturers currently following the practice of charging $0.01" and "[t]herefore the delay of this portion of the rule would not result in a significant economic impact." *Id.* at 20,009.

21. In the May 2018 proposal, HHS stated that the delay of the civil money penalties provision "should have no adverse effect given that other more significant remedies are available to entities that believe that they have not been provided the full discount." *Id.* at 20,009.

22. On June 5, 2018, the Secretary issued a final rule delaying the effective date, to July 1, 2019. 83 Fed. Reg. 25,943 (June 5, 2018).

23. HHS received 29 comments to the proposal to extend the effective date to July 1, 2019. 83 Fed. Reg. at 25,944. In the final rule, HHS notes that "[c]ommenters disagree with HHS that delaying implementation of the rule has no adverse effect given that other more significant remedies are available to entities who believe that they have been overcharged by manufacturers." *Id.* at 25,944. Commenters stated that "remedies do not exist" and that entities

6

"cannot audit manufacturers or sue [them] in court," and cannot "check if they are being charged the right price." *Id.* at 25,945.

24. In response to comments that disagreed with HHS's assertion that delaying implementation of the rule has no adverse effect given that other significant remedies are available to entities that believe they have been overcharged, HHS stated: "HRSA's website describes how it carefully reviews pricing discrepancies brought to its attention." *Id.* at 25,945.

25. In response to comments that disagreed with HHS's assertion (in the proposal) that delaying implementation of the rule has no adverse effect given that other significant remedies are available to entities that believe they have been overcharged, HHS stated: "Further, misreporting pricing data to CMS could lead to State and Federal False Claims Act liability. . ." *Id.* at 25,945.

26. In response to comments submitted to the proposed delay rule regarding the posting of ceiling prices, HHS stated that it "performs audits of manufacturers, investigates all allegations of overcharging, and participates in settlements that have returned millions of dollars to [340B providers]." It further stated that "it would be disruptive to require stakeholders to make potentially costly changes to pricing systems and business procedures to comply with a rule that is under further consideration and for which substantive questions have been raised." 83 Fed. Reg. at 25,945.

27. In response to comments that disagreed with HHS's assertion (in the proposal) that delaying implementation of the rule has no adverse effect and that such assertion ignored the "extent of overcharges as documented in OIG reports," HHS stated that it "believes the majority of manufacturers currently following the practice of charging $0.01" and so the delay would "not result in a significant impact." *Id.* at 25,945.

28. In the June 5, 2018 final rule delaying the effective date HHS stated: "HHS does not believe that this delay will adversely affect any of the stakeholders in a meaningful way." *Id.* at 25,944.

29. In the June 5, 2018 final rule delaying the effective date, HHS stated:

> HHS continues to believe that the delay of the effective date will provide regulated entities with needed time to implement the requirements of the rule, as well as allowing a more deliberative process of considering alternative and supplemental regulatory provisions, and to allow for sufficient time for any additional rulemaking. HHS intends to engage in additional or alternative rulemaking on these issues and believes it will be counterproductive to effectuate the final rule prior to issuance of additional or alternative rulemaking on these issues. HHS is developing new comprehensive policies to address the rising cost of prescription drugs. These policies will address drug pricing in government programs, such as Medicare Parts B & D, Medicaid, and the 340B Program. Due to the development of these comprehensive policies, we are delaying the effective date of the January 5, 2017 final rule to July 1, 2019.

*Id.* at 25,944.

30. In the June 5, 2018 final rule delaying the effective date, HHS also stated:

> [T]he 340B Program is a complex program that is affected by changes in other areas of health care. HHS has determined that this complexity and changing environment warrants further review of the final rule and delaying the final rule affords HHS the opportunity to consider alternative and supplemental regulatory provisions and to allow for sufficient time for any additional rulemaking.

*Id.* at 25,945.

31. In the June 5, 2018 final rule delaying the effective date, HHS also stated that "it would be disruptive to require stakeholders to make potentially costly changes to pricing systems and business procedures to comply with a rule that is under further consideration and for which substantive questions have been raised." *Id.* at 25,945.

32. In the June 5, 2018 final rule delaying the effective date, HHS also stated: "HHS believes this delay will not adversely impact covered entities and instead will save the healthcare sector compliance costs, as discussed in the January 5, 2017, final rule." *Id.* at 25,945.

Respectfully submitted,

*/s/ William B. Schultz*

William B. Schultz (D.C. Bar. No. 218990)
Margaret M. Dotzel (D.C. Bar. No. 425431)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
1800 M St, NW
Washington, DC 20036
Tel: 202-778-1800
Fax: 202-822-8136
wschultz@zuckerman.com
mdotzel@zuckerman.com
aabelson@zuckerman.com

*Attorneys for Plaintiffs*