UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN HOSPITAL                .
ASSOCIATION, et al.,             .
                                 . CA No. 18-2112 (JDB)
        Plaintiffs,              .
                                 .
     v.                          .
                                 . Washington, D.C.
DEPARTMENT OF HEALTH AND          . Monday, December 17, 2018
HUMAN SERVICES, et al.,          . 2:23 p.m.
                                 .
        Defendants.
. . . . . . . . . . . . . . .

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE JOHN D. BATES
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

For the Plaintiffs:          WILLIAM B. SCHULTZ, ESQ.
                             MARGARET DOTZEL, ESQ.
                             ADAM ABELSON, ESQ.
                             Zuckerman Spaeder, LLP
                             1800 M Street, NW
                             Suite 1000
                             Washington, DC 20036
                             (202) 778-1820

For the Defendants:          JUSTIN M. SANDBERG, ESQ.
                             JEAN LIN, ESQ.
                             U.S. Department of Justice
                             Federal Programs Branch
                             1100 L Street, NW
                             Room 11004
                             Washington, DC 20005
                             (202) 514-5838

Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             U.S. Courthouse, Room 4704-A
                             333 Constitution Avenue, NW
                             Washington, DC 20001
                             (202) 354-3186

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
1                        P R O C E E D I N G S

2            THE DEPUTY CLERK:  Your Honor, we have civil action

3   18-2112, American Hospital Association, et al., versus Alex M.

4   Azar, II.  I would ask that lead counsel approach the lectern,

5   identify yourself and those at your respective tables, starting

6   with the plaintiff.  Thank you.

7            MR. SCHULTZ:  Bill Shultz for the plaintiffs.

8   With me at counsel table is Margaret Dotzel and Adam Abelson.

9            THE COURT:  Mr. Schultz and others, good afternoon.

10           MR. SANDBERG:  Good afternoon, Your Honor.  Justin

11  Sandberg from the Department of Justice for HHS.  With me at

12  counsel table is Jean Lin, also from the Department of Justice,

13  as well as Pamela Kurland and William Burgess from the Department

14  of Health and Human Services Office of General Counsel.

15           THE COURT:  Good afternoon to all of you.

16      So I thought we should all get together to figure out what

17  needs to be done in this case.  It's changed somewhat since the

18  initial filing.  There's an argument that the case as filed has

19  become moot because of the January 1st date, but there seems to

20  be a hope on the part of the plaintiffs to get another issue

21  resolved that may or may not be part of the complaint as filed.

22  Tell me where you think we are and what needs to be done here.

23           MR. SCHULTZ:  Should I start, Your Honor?

24           THE COURT:  Please.

25           MR. SCHULTZ:  Thank you.  This will take just a few
```

1    minutes, but I think it's worth just kind of reviewing the

2    bidding for a minute to put this in context.

3        As you know, the case is about delays by the Department

4    of Health and Human Services in making regulations effective,

5    and these are regulations related to the Section 340B Program.

6    That's a program that requires drug companies to give deep

7    discounts on the sale of drugs to community health centers and

8    certain nonprofit hospitals.  The program has been in place

9    since 1992, but there really hasn't been an effective enforcement

10   mechanism to ensure that the recipients are getting the discounts

11   they're entitled to.

12       So in 2010, as part of the Affordable Care Act, Congress

13   directed HHS to put in place a number of measures that would

14   aid in the enforcement of the program so that the drug companies

15   would be following the rules.

16       The three at issue in this case are civil money penalties,

17   defining the ceiling price -- this is the drug price, and then

18   the discounts are taken off of that -- and then posting the

19   ceiling prices on a secure website so that the recipients of the

20   discounts, the hospitals and the community health centers, could

21   see what the prices are, figure out whether they're getting the

22   discounts to which they're entitled.

23       The final regulation was issued January 5, 2017, sixty-day

24   effective date, an enforcement date of April 1, and then it's

25   been delayed five times since then.  That's what this lawsuit

1    was about.  The last time, in June of 2018, it was delayed until

2    July 1, 2019, and we fully expected delays beyond that unless we

3    did something.

4        So on September 11th of this year, the plaintiffs filed

5    their lawsuit with a motion for summary judgment, and the basic

6    claim was the delays were a violation of the Administrative

7    Procedure Act.  The government hasn't defended.  On October 15,

8    it asked for a stay, and as part of that, it announced that it

9    was going to go through a rulemaking with the goal of the

10   regulations becoming effective on January 1, 2019.

11       On November 2, the Court denied the stay and required

12   the HSS to respond to the motion for summary judgment.  On

13   November 13, defendants made their filing.  They did not contest

14   the merits.  So they've conceded the merits.  They moved to

15   dismiss on standing.  We responded.  And then in their reply on

16   December 3rd, the defendants conceded standing.  But they made

17   an elaborate argument as to why we are not entitled to sort of

18   the remaining piece of relief having to do with the posting of

19   the website, and that's the only remaining issue in the case.

20              THE COURT:  Where is that issue in the complaint?

21              MR. SCHULTZ:  Okay.

22              THE COURT:  Since you want to do this, Mr. Schultz,

23   and get into this in this way by going through this, where does

24   the complaint say something specifically about this publication

25   of pricing data on a publicly accessible website by April 1,

1  2019?  Where's that in the complaint?

2          MR. SCHULTZ:  Well, it's specifically mentioned in

3  paragraphs 39 and 45 of the complaint.  In 39 we go through the

4  fact that the statute requires the posting on the website, and

5  in paragraph 45 --

6          THE COURT:  Those are the two transparency paragraphs.

7          MR. SCHULTZ:  Yes.  But that's what this -- yes.

8  And then in paragraph 45 we talk about what's in the proposed

9  regulation, and there are three pieces to it.  One piece is the

10 posting on the website, but then in the relief -- let me talk

11 about the relief for a minute --

12         THE COURT:  Okay.

13         MR. SCHULTZ:  -- because that's obviously important.

14 The relief is that the Court order that the final rule be made

15 effective in 30 days.  The final rule -- this is Section 10.10(a)

16 of the final rule states, HRSA "will publish" the 340B ceiling

17 prices.  So that's in the final rule that we asked to be made

18 effective within 30 days.

19     And we think that a fair reading of this is, and this is

20 what we thought, that once the final rule was effective, then

21 this piece of it would be effective just like the other pieces,

22 just like the civil penalties and the ceiling price piece.

23     Now, that's true.  Those are imposed on manufacturers, and

24 this is an obligation of HHS, but none of them have deadlines.

25 They all were to become effective with the final rule.  And

1    then, of course -- and this isn't specific, but the complaint

2    has the standard request for such other relief as the Court --

3              THE COURT:  Where's the April 1, 2019, date come from?

4              MR. SCHULTZ:  Well, where it comes from is it's really

5    the date that defendants have offered.

6              THE COURT:  How have they offered it?

7              MR. SCHULTZ:  In other words, the defendants, in their

8    most recent filings --

9              THE COURT:  Is that the first time that that date

10   is mentioned, in that most recently filing and the declaration

11   attached to it?

12             MR. SCHULTZ:  No.  No.  What we did is -- I mean,

13   in our papers after the complaint, you know, in the motion for

14   summary judgment, we raise this issue on pages 7 and 16, and

15   then when we learned that defendants were not going to do this

16   at the time the rule became effective, we raised the issue in

17   our opposition to the motion to the stay and in our opposition

18   to the motion to dismiss.  And I believe there we said -- well,

19   we thought they're obligated to do it right away -- that we'd

20   be satisfied with April 1, 2019.

21             THE COURT:  That's the date that you offered.

22             MR. SCHULTZ:  I think so, yeah.  But then they, in

23   their most recent filing and in their affidavit --

24             THE COURT:  They said they intend to do it by April 1,

25   2019.

1          MR. SCHULTZ:  Yes.

2          THE COURT:  So you think that they have just adopted

3     the date that you've offered?

4          MR. SCHULTZ:  No.  Here's what I think it is, is that

5     we both know the same thing, which is that this is a quarterly

6     system, and it's hard for them to do it anything but quarterly.

7     So we understood it was going to take some time to collect the

8     prices from the companies and to put them together and to post

9     them.

10        So we thought it was reasonable, if this was to go into

11    effect January 1, to require them to post it by April 1, because

12    that's the beginning of the next quarter, and I think they

13    picked that off.  I think it was independent but kind of based

14    on the same reasoning.

15        Now, if the Court deemed it necessary, you know, we could

16    certainly amend the complaint.  We can also respond to their

17    argument on mootness which they made in their reply.

18         THE COURT:  But for this issue, do you think the case

19    is moot?

20         MR. SCHULTZ:  We think we've gotten the relief we

21    requested, yes, but this is the remaining issue.

22         THE COURT:  Then there's nothing to respond to,

23    I wouldn't think, any further.  If that aspect of the case is

24    moot and the only thing that is possibly for the Court to decide

25    is the issue of the publication on the --

1          MR. SCHULTZ:  I mean, we will be asking for attorneys'

2     fees once there's a judgment.

3          THE COURT:  Well, I don't consider that to be

4     something that's --

5          MR. SCHULTZ:  I know.  I know.

6          THE COURT:  -- keeping the case alive.  You can always

7     do that after the case is over.

8          MR. SCHULTZ:  So what we would suggest -- and again,

9     we're willing to amend the complaint or file another brief.

10    But what we would suggest the Court do, since everybody agrees

11    on April 1 -- and I have to acknowledge that the affidavit that

12    the defendants have filed, I think, shows they're very serious

13    about this.  I don't have any doubts about that.  But we know

14    from past experience that sometimes things change.

15         So what we would suggest is the Court retain jurisdiction,

16    ask the government to report on its progress on January 15th

17    and every 30 days and thereafter, and that way, if there is a

18    report, if they're not going to make April 1, then we'll be able

19    to brief that or come to the Court to ask for relief; or maybe

20    there'll be a good excuse, and we can agree to a later date.

21    We all, I think, hope that doesn't happen.

22         I do acknowledge that the government is serious about

23    this, but I think the history of the case would make the

24    Court understand why we're not willing just to rely on the

25    government's hopes, because things change sometimes.

1          THE COURT:  All right.  Let me hear what the

2     government has to say in response.  Thank you.

3          Is the April 1st date of their creation, or where does it

4     come from?  Does it come from some separate publication by the

5     government or --

6          MR. SANDBERG:  So -- I'm sorry interrupt, Your Honor.

7          THE COURT:  I mean, you want to look at this as sort

8     of on a different track than the 340B rule.  How is it?

9          MR. SANDBERG:  So the April 1st -- so the creation

10    of the system did technically come through an information

11    collection process separate from the final rule, which is what

12    -- there's a lot of final rules.

13         The 2017 340 drug-pricing rule itself says that the website

14    posting is proceeding on a separate track under -- I think what

15    they call an information-collection process or something, and

16    that's proceeding technically under that separate process.  So

17    it was not encompassed in the final 340B rule from --

18         THE COURT:  Well, you say a separate process, but in

19    terms of rules, is there a separate rule or separate publication

20    in the Federal Register?

21         MR. SANDBERG:  There's a publication that is cited

22    in the 2017340B rule.  I can get you the cite.  It was in our

23    brief as well.  And it's basically a request to OMB to collect

24    information.  The government has to, in certain circumstances,

25    get OMB's approval to request information.  So what the Federal

1  Register has, I believe, is the HHS -- some aspect of the HHS

2  request to OMB to collect this information, and so it was not

3  encompassed within the 340B rule published in 2017.

4  As for the 2019 date, where that comes from is, as my

5  opposing counsel said, it is a quarterly system.  And so the

6  quarter -- the first quarter after January 1st would be April

7  1st.  So HHS could not have the website -- the posting of

8  pricing information at the same time as the pricing rule takes

9  effect because they have to collect the data.  The pricing data

10  comes from --

11  THE COURT:  So it's the first date on which you could

12  do it after the rule becomes effective.

13  MR. SANDBERG:  Correct.  That's where it comes from.

14  And the agency is making all reasonable efforts to make that

15  happen.  They are very serious about it.  And it's the agency's

16  position they're on track to make that date, but it's a

17  complicated system.  And, as we said, the case is moot.

18  But even setting aside sort of the legal aspects of it

19  in terms of just the practicality, it's a large, complicated

20  system, and the agency can't really commit to that April 1st

21  date given the sort of complexity of it and the fact that

22  certain aspects are out of its control.  If manufacturers have

23  significant problems uploading data or something like that, then

24  it might not be able to go live on April 1st.

25  As for the sort of the legal issues I put aside, we do

1   think the case is moot.  As we pointed out, the relief they

2   requested was relief related to the 340B rule.  They asked

3   for a declaration that it was arbitrary and capricious to delay

4   the publication of the -- the implementation of that January

5   2017 rule, and an injunction to the same effect, that since

6   the November 30th rule this year making January 1st, 2019,

7   the implementation date, all the relief they requested in their

8   complaint is moot.  So, at this point, the case is moot.  So we

9   don't think the Court could impose any status report

10  requirements at this point.

11      With regard to their ability to amend, I think we'd have

12  to look to see whether we think amendment is appropriate and

13  permissible at this point, and we'd respond to any request they

14  would make in that regard.  I think the important aspect, at

15  least from our perspective, is that the agency is making all

16  reasonable efforts to have it ready by April 1, 2019.

17      Mr. Schultz referenced delays.  In the past, there were

18  delays, but the agency was very much aboveboard about it.  It

19  issued rules, explained it was going to be delaying the rule and

20  why.  But the agency has since decided there's no further need

21  for delay and has sort of moved full speed ahead on this.

22      So I don't think there's any reason to believe that the

23  agency will sort of suddenly start, you know, suddenly change

24  course.  The agency sort of had good -- had reasons for wanting

25  to delay in terms of making sure people were prepared for the

1   changeover.  And in view of sort of larger regulatory reform

2   they want to do, the agency has since decided that those don't

3   require any further delay and is moving forward, and there's

4   declarations from the agency saying it's moving forward.

5   Mr. Schultz has represented he thinks the agency's serious about

6   it, which it is.  So, all things being equal, we are on track

7   for April 1, 2019.

8          THE COURT:  All right.  Here's how I see it, and

9   I don't think I'm saying anything that both of you haven't

10   already said.  The heart of the case as filed, the effective

11   date for the 340B rule is now moot based on the new date of

12   January 1, 2019, for the effective date of the rule.

13          There is an argument that this sub or additional issue

14   relating to the publication of the pricing data on the accessible

15   website on April 1, 2019.  There's an argument that that's a

16   live issue; perhaps it requires an amendment of the complaint.

17   I think that in order for me to decide whether it is a live

18   issue, I'd probably require a little more in the way of briefing

19   since it hasn't really been addressed very extensively in the

20   filings to date.

21          So where we are is I don't think I have to make any

22   ruling on mootness given the two sides' agreement with respect

23   to the 340B rule.  I could proceed, perhaps with an amended

24   complaint, probably with some additional briefing -- not

25   extensive, but additional briefing, not facing a date in

the next couple of weeks to have to be concerned about, but

instead facing a date three months-plus from now.  So we could

do that on a litigation track.

Or, as Mr. Shultz is now proposing, we could do it on more

of a monitoring track with the Court asking the defendant to

file, maybe not quite as often as he's requested, but to file

something on one or two occasions with respect to the status of

the effort to publish on the website by on or before April 1,

2019, and allow the parties, if they need to, to discuss that as

things evolve, and if they need to, to come to the Court to try

to get relief, at which point the question of whether it's

within the scope of the complaint will be at issue, and whatever

further briefing you propose will be before me and I can decide

it.

So either we can do that now, or I can adopt the proposal

of the plaintiffs to sort of have a little bit of -- I think

calling it "monitoring" is a little bit of an overstatement.

It's just a status report or two so the Court is aware -- but

really so that everybody's aware of how things are going with

respect to the April 1st date, at which point, if the plaintiffs

are concerned, they can either talk to HHS or come to the Court

for some further relief.

And I guess I'm looking to the defense side to see if that

approach makes -- both makes sense and is acceptable to you.

Otherwise, we're going to litigate, I take it, whether that's

1    fairly within the scope of the complaint and whether the Court

2    should order relief.

3         But it seems to me -- and now I'm looking at the

4    plaintiff's side.  It seems to me that today the relief you

5    could get for that is pretty marginal.  They've said they're

6    going to make good-faith efforts.  You've admitted that they are

7    making good-faith efforts; they're going to work on it.  What am

8    I going to do, say you've got to do more than perhaps you can

9    do?  I'm not sure what relief I can give today.

10             MR. SCHULTZ:  No.  I think it would be to order them

11   to do it by April 1st and order them, if they're falling behind,

12   to come to you and explain.  I think it would be something along

13   those lines.

14             THE COURT:  So the most you could get is basically

15   what you're --

16             MR. SCHULTZ:  Yeah, it'd be a little stronger --

17             THE COURT:  -- proposing anyway.

18             MR. SCHULTZ:  -- the motion could be little stronger,

19   but I think what we've proposed should work for everybody.

20             THE COURT:  So what do you think?  Is this something

21   that makes sense, Mr. Sandberg, or do you think we have to

22   litigate something now?

23             MR. SANDBERG:  I think we'd like to propose a middle

24   ground.  Given that --

25             THE COURT:  Oh, good.

1      (Laughter)

2          MR. SANDBERG:  -- which judges always like to hear.

3      Given that we think there's jurisdictional issues, it might

4   make sense for plaintiff to amend and then we could do status

5   reports?  Because, otherwise, I think it is very difficult for

6   us to agree to do status reports given that it's our position

7   that the case is moot.  If plaintiffs amend their complaint,

8   then I suppose we could do status reports, and I feel like

9   that's something of a middle ground between full-fledged

10  litigation and the Court's other option.

11         THE COURT:  Is that an unreasonable suggestion,

12  Mr. Schultz, for you to go ahead and amend the complaint?

13  It wouldn't take much for you to amend the complaint --

14         MR. SCHULTZ:  No.  We could certainly amend the

15  complaint.

16         THE COURT:  -- and then we could go from there.

17         MR. SCHULTZ:  Do we need a motion to amend, or is

18  the government agreeing to the amendment?  I mean, we'll do

19  whatever.  Even a motion would be simple enough to do, however

20  the Court wants us to do it.

21         THE COURT:  Would you consent to an amended complaint?

22  You're not consenting that they're entitled to the relief they

23  seek; you're just consenting to them being able to amend.

24         MR. SANDBERG:  No, I understand.  Presumably, it's

25  obviously limited to this April 1, 2019, publication.  Yeah,

1    we'd consent to that.

2          THE COURT:  All right.  So without a motion, you can

3    go ahead and file an amended complaint.  So let's pick a date

4    for you to do that.

5          MR. SCHULTZ:  We can do it by Thursday.

6          THE COURT:  All right.  What is Thursday, Mr. Bradley?

7          THE DEPUTY CLERK:  That's the 20th.

8          THE COURT:  So let's make it the 21st just in case

9    you want to use Friday as well.  So we'll make it the 21st.  And

10   then let's just --

11         MR. SANDBERG:  I did want to make a --

12         THE COURT:  Sure.  Go ahead.

13         MR. SANDBERG:  As I understand it, the agency will

14   be aware of whether there are sort of -- it will be aware of

15   whether there are going to be unexpected difficulties after it

16   starts uploading the information, the pricing information?

17         THE COURT:  When do you get that?  You get that in

18   February or by February 1st?

19         MR. SANDBERG:  There's sort of two different groups.

20   One group will be around mid-February, and the other will be at

21   the end of February.  So I think if we filed a status report at

22   the end of February, after we've at least gotten the first group

23   and maybe some of the second group, at that point there's really

24   not going to be much to report is my understanding.

25         THE COURT:  All right.  So it is pushing us pretty far

1    along the limited time track, but I guess the point that's

2    being made is that a report on January 15 or even February 1

3    isn't going to say much, because not much is going to be

4    happening before they start to get the pricing information.

5         MR. SCHULTZ:  (To opposing counsel.)  And is the same

6    true for February 15?

7         I don't want to --

8         THE COURT:  It's all right to talk a little bit

9    between yourselves.

10        MR. SANDBERG:  What do you mean?

11        MR. SCHULTZ:  I was thinking February 15 and March 15,

12   but maybe -- I mean, would you still not know anything?

13        MR. SANDBERG:  I think the first group of data -- I

14   can answer.  I think the first group of data comes right in the

15   middle of February.  So the 15th might be a day after it comes,

16   and, I don't know that they'll know much a day after it comes.

17   So I really do think the end of February is sort of a more

18   appropriate --

19        MR. SCHULTZ:  So what if we said the end of February,

20   and March 15?

21        THE COURT:  Because the end of February might not

22   catch the second group of data.

23        MR. SANDBERG:  No, I understand.  It might not catch

24   all of it.  I think that works for us.

25        THE COURT:  All right.  End of February.

1        What day of the week is February 28, Mr. Bradley?

2              THE DEPUTY CLERK:  That will be on a Thursday.

3              THE COURT:  And what is the second date that -- you'll

4     be getting things the end of February is the second date.  What

5     I'd like to do is make two status reports.  The second one

6     probably -- well, I'm not going to characterize it.  Two status

7     reports, one of February 28th, and the other one March -- what's

8     two weeks after the 28th?  The 14th?

9              THE DEPUTY CLERK:  Fourteenth.

10             THE COURT:  March 14.  The only problem with this

11    is if the plaintiffs think they're entitled to some relief and

12    that relief is focused on April 1, you'll be filing papers in

13    the last two weeks of March asking me to rule in the last two

14    weeks of March.  So it'll be a little bit awkward.

15        And we all know, do we not, -- correct me if I'm wrong; I'm

16    basing this on what you said -- that if it doesn't happen on

17    April 1, then it doesn't happen until July 1.

18             MR. SANDBERG:  That's correct, Your Honor.  It's a

19    quarterly program.  So my understanding is it would move to the

20    beginning of the next quarter.

21             MR. SCHULTZ:  I'm not sure we would agree to that, but

22    we understand it's the government's position.  So it gets tough.

23             MR. SANDBERG:  Well -- sorry, Your Honor.  Just a

24    second.  (Conferring with General Counsel.)

25             THE COURT:  Did you have anything further?

1          MR. SANDBERG:  I don't want to leave a misimpression.

2     It is a quarterly program, and my understanding is that is the

3     default.  It might be possible to do something off of that

4     quarterly schedule, but I actually don't know if that's possible.

5     I just don't want to --

6          THE COURT:  We won't attempt to make any decision

7     based on that.

8          MR. SANDBERG:  Yeah, I just don't want to leave the

9     Court with a mistaken impression.

10          THE COURT:  I appreciate that.

11     All right.  So what I'll do is I'll issue an order

12     capturing this, and the important parts for the future are

13     the amended complaint by the 21st of December and then status

14     reports with respect to the publication of the pricing data on

15     the website, first one due on February 28, and the second one

16     due on March 14.  And then -- do you want me to set a status so

17     we have a get-together, or should I just leave it to you to do

18     whatever is going to be done or needs to be done after March 14?

19          MR. SCHULTZ:  Well, if we have a problem after

20     March 14, we'll come right to the Court.

21          THE COURT:  That's what I figured.

22          MR. SCHULTZ:  Yeah.  So either --

23          THE COURT:  Why don't I just leave it open.

24          MR. SCHULTZ:  That's fine with us.

25          THE COURT:  Is that all right?

1          MR. SANDBERG:  Certainly.

2          THE COURT:  So I'll issue an order along those lines,

3    and what I would encourage -- I don't think I need to say this

4    to experienced lawyers and government officials.  I would

5    encourage communication.  Let's not create a problem that we

6    don't need to create, and if communication can avoid that being

7    a litigation problem, I think it's to the public's benefit that

8    you have those communications and see if you can avoid having to

9    litigate over it.

10         It seems to me to be something that either will go smoothly

11   and there won't be a problem, or there might be real reasons

12   that if you talk about them maybe won't lead to litigation but

13   just will lead to ideas on how best to deal with it.

14         So with that, anything further that we should discuss today?

15         MR. SCHULTZ:  You know -- I'm sorry.  But now that

16   I think about it, if the Court is willing to set a status call

17   shortly after March 14, maybe that would make sense, and we can

18   always say we don't need it.  That way it's on the calendar;

19   everybody's kind of pointing to it.

20         THE COURT:  I'm willing.  I have to look at my

21   calendar.  If you want, I could do it.  But certainly between

22   the 14th and April 1st, I'd try to make it closer to the 14th

23   than to April 1st, just in case there is a problem.

24         MR. SCHULTZ:  Yes.  And I think that may actually

25   help us resolve any differences we may have, too.

1          THE COURT:  Sometimes it does, although the April 1st

2     date probably is a more important date for you than one status

3     date with me.  But I can do that.  I don't see any downside to

4     that.  All right.  I will issue an order consistent with that.

5          I thank you all for coming in on fairly short notice and

6     for what I think are constructive proposals with respect to how

7     to deal with things going forward.

8          And with that, good day.  Thank you.

9          (Proceedings adjourned at 2:52 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE